IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. **3:18-cr-450-L-2** |
| | § | |
| **CRISTOVAL ESPINOZA,** | § | |
| | § | |
| Defendant. | § | |

## **MEMORANDUM OPINION AND ORDER**

Before the court is Defendant Cristoval Espinoza's Motion to Withdraw his Plea of Guilty, filed April 7, 2021. After consideration of the Defendant's motion, Government's response, record, and applicable authority, the court **denies** Defendant Cristoval Espinoza's Motion to Withdraw his Plea of Guilty (Doc. 255).

**I.     Factual and Procedural Background**

Cristoval Espinoza ("Defendant" or "Mr. Espinoza") seeks to withdraw his June 20, 2019 guilty plea to conspiring to distribute a controlled substance analogue pursuant to Federal Rule of Criminal Procedure 11(d)(2)(B). He states in his Motion that he should be allowed to withdraw his guilty plea for three reasons: (1) the substance in question, FUB-AMB, is not a controlled substance analogue as defined by the Analogue Act, (2) Mr. Espinoza lacked the requisite knowledge to plead guilty to the knowing and intentional distribution of a controlled substance, and (3) both prior to and after the court's acceptance of his guilty plea, Mr. Espinoza was denied the effective assistance of counsel. He argues that, since FUB-AMB is not a controlled substance analogue, no offense was committed and supports a credible assertion of innocence. He further

argues that the sole reason for the delay in the withdrawal of his guilty plea is due to his counsel's ineffective assistance.

On April 19, 2021, the United States of America ("United States" or "Government") filed a response in opposition to Mr. Espinoza's Motion. The Government contends that the factors applicable to motions to withdraw guilty pleas weigh against Mr. Espinoza and that Mr. Espinoza has not met his burden of demonstrating a fair and just reason for withdrawing his guilty plea. The court determines that the factual background provided by the Government is pertinent to its analysis and incorporates that background as follows:

> Espinoza and five codefendants operated two smoke shops in Dallas and Grand Prairie. They sold smoking paraphernalia and synthetic cannabinoids. After several people overdosed on their products, the DEA began to investigate. That investigation culminated in the execution of a search warrant, where the DEA found synthetic cannabinoids, firearms, and other evidence of distribution.
>
> **1. Espinoza admits his guilt at a proffer meeting.**
>
> The Grand Jury indicted Espinoza and five codefendants. (Doc. 6.) The indictment charged two crimes: (1) conspiracy to distribute a Schedule I controlled substance analogue, and (2) possession of a firearm in furtherance of that drug trafficking crime, in violation of 18 U.S.C. § 924(c). (Doc. 6.) Espinoza made his initial appearance on September 18, 2018, and he was released on pretrial conditions. (Doc. 42.) Within days, Espinoza and his lawyer, Vincent Carrizales, met with counsel for the government and the lead case agent. In that proffer meeting, Espinoza admitted that he knew individuals purchased the synthetic cannabinoids to smoke them (*i.e.*, for human consumption as the statute requires) and that the DEA had banned certain chemicals. Although Espinoza was not familiar with which chemicals had been banned, he did not dispute that he knew the substances that he sold were illegal. Further, he discussed the list of chemicals that he and his codefendants had on hand to show to anyone in an attempt to thwart law enforcement. As Espinoza's trial date approached, his coconspirators all pled guilty, and he changed lawyers to Michael Levine. (Docs. 59, 137.) Espinoza later violated the conditions of his pretrial release. Specifically, Espinoza was arrested for selling marijuana from one of the two locations that were the subject of the indictment. After a lengthy hearing, Magistrate Judge Horan revoked his pretrial release. (Doc. 159.) Espinoza has remained in federal custody ever since.

## 2. Like his coconspirators, Espinoza pleads guilty and admits his guilt under oath.

Even though Espinoza had violated his conditions of pretrial release by committing a new offense, the government still extended a plea offer: Espinoza could plead guilty to the conspiracy count only, and the government would dismiss the Section 924(c) count. The government set its offer to expire on May 29, 2019. The government subsequently extended that deadline after a series of email exchanges with Levine.

On May 30, 2019, Espinoza signed a written plea agreement, (Doc. 166), and a factual resume admitting his guilt, (Doc. 165.) In his factual resume, Espinoza admitted that he knew the substance was a controlled substance analogue, and that he knew it was intended for human consumption. (Doc. 165.) Standing by his decision to plead guilty, Espinoza appeared for his rearraignment hearing on June 20, 2019. (*See* Doc. 257.) Under oath, Espinoza admitted that he understood the charges against him. (Doc. 257 at 12:9-18.) After counsel for the government read the elements of the crime to which he was pleading guilty—including that Espinoza "knew or reasonably should have known that the scope of the conspiracy involved the distribution of a controlled substance analogue," (Doc. 257 at 13:16-18)— Espinoza acknowledged his understanding, (*id.* at 13:19-22). He admitted that he had committed that crime. (*Id.* at 13-14.) Moreover, Espinoza assured the court that the facts set out in his factual resume were true. (*Id.* at 20.) Espinoza further assured the court that he was fully satisfied with his representation from Levine. (*Id.* at 19:14-16.) For his part, and contrary to his claims here, Levine told the court that Espinoza's guilty plea was consistent with his advice. (*Compare* Doc. 257 at 19:14-15 (affirming that a guilty plea was "consistent with [Levine's] legal advice), *with* Doc. 255 at 2 ("counsel advised Mr. Espinoza that he should persist in his plea of "not guilty" and proceed to jury trial. Counsel's advice notwithstanding, Mr. Espinoza proceeded with his guilty plea.").) Like Espinoza, Levine confirmed that he had reviewed the factual resume, and that the facts set out there were "consistent with the true facts" as Levine understood them. (Doc. 257 at 20:22-25.) This Court accepted the defendant's guilty plea on August 21, 2019. (Doc. 213.)

Gov.t's Resp. 2-5 (footnotes omitted).

## II. Standard for Withdrawal of Guilty Plea

Prior to sentencing, the court may exercise its discretion to grant a motion to withdraw a guilty plea if the defendant presents a "fair and just reason for requesting the withdrawal." Fed. R .Crim. P. 11(d)(2)(B); *United States v. Lampazianie,* 251 F.3d 519, 524 (5th Cir. 2001). There is no absolute right to withdraw a guilty plea, and the defendant bears the burden of establishing a

fair and just reason for withdrawal. *United States v. Brewster,* 137 F.3d 853, 857-58 (5th Cir. 1998).

When ruling on the motion, the court should consider the *Carr* factors:

> (1) whether or not the defendant has asserted his innocence; (2) whether or not the government would suffer prejudice if the withdrawal motion were granted; (3) whether or not the defendant has delayed in filing his withdrawal motion; (4) whether or not the withdrawal would substantially inconvenience the court; (5) whether or not close assistance of counsel was available; (6) whether or not the original plea was knowing and voluntary; and (7) whether or not the withdrawal would waste judicial resources; and, as applicable, the reason why defenses advanced later were not proffered at the time of the original pleading, or the reasons why a defendant delayed in making his withdrawal motion.

*United States v. Carr*, 740 F.2d 339, 343-44 (5th Cir. 1984).

The court need not make a finding as to each *Carr* factor, as it makes its determination based on the totality of the circumstances. *United States v. Powell,* 354 F.3d 362, 370-71 (5th Cir. 2003); *Brewster,* 137 F.3d at 858. Moreover, a defendant's assertion of conclusory allegations does not warrant withdrawal of a plea of guilty, at least where such allegations are clearly refuted by the record. *United States v. Bounds,* 943 F.2d 541, 543 (5th Cir. 1991).

### III. Analysis

Although Defendant sets forth three reasons in his motion, he, in essence, only addresses two of the *Carr* factors: assertion of innocence and ineffective assistance of counsel, which the court treats as whether or not close assistance of counsel was available to him. Further, in reviewing the record, the court notes that there are other *Carr* factors that weigh against the withdrawal of Mr. Espinoza's guilty plea.

#### A. Assertion of Innocence

Mr. Espinoza asserts that, according to expert chemist Prof. Gregory B. Dudley, Ph.D., FUB-AMB is not a controlled substance analogue. Controlled substance analogues are determined by the Controlled Substance Analogue Enforcement Act of 1986 (Analogue Act) which "identifies a

**Memorandum Opinion and Order – Page 4**

category of substances substantially similar to those listed on the federal controlled substance schedules and then instructs courts to treat those analogues, if intended for human consumption, as controlled substances listed on schedule I for purposes of federal law." *McFadden v. United States*, 576 U.S. 186, 188 (2015).

"Under the *Carr* framework, the defendant must not only assert his innocence, but also provide a 'substantial supporting record' for this assertion in order to support his motion to withdraw." *United States v. Strother*, 977 F.3d 438, 444 (5th Cir. 2020). In this case, Mr. Espinoza offers only a so-called "Declaration" of Prof. Dudley to support his assertion that the substance he distributed was not a controlled substance analogue and, thus, not a crime.[*] Def.'s Mot. to Withdraw Ex. A. To the contrary, binding circuit authority has held that plant material closely related to THC, even if only fractionally composed of synthetic cannabinoids like FUB-AMB, meets the requirements of a controlled substance analogue. *United States v. El Hage,* 741 F. App'x 194, 199 (5th Cir. 2018). Mr. Espinoza's evidence simply asserts that an expert disagrees with this authority. Rather than asserting his innocence, Mr. Espinoza makes a policy argument that is best determined by the court at sentencing when it considers whether to grant a variance under the sentencing factors.

Mr. Espinoza further argues that, even if the court finds that FUB-AMB is a controlled substance analogue, there is no evidence that he possessed the requisite knowledge to substantiate his guilty plea. To properly prove a violation of the Analogue Act:

> The Government must establish that the defendant "knew he was dealing with a controlled substance." When the substance is an analogue, "that knowledge requirement is met if the defendant knew that the substance was controlled under the CSA or the Analogue Act, even if he did not know its identity." A defendant's knowledge can be established in one of two ways:

---

[*] The court cannot rely on this "Declaration" because it does not meet the requirements of 28 U.S.C. § 1746. It has not been made or executed under penalty of perjury that the document's contents are true and correct; it is undated; and it is unsigned.

> First, it can be established by evidence that a defendant knew that the substance with which he was dealing is some controlled substance—that is, one actually listed on the federal drug schedules or treated as such by operation of the Analogue Act—regardless of whether he knew the particular identity of the substance. Second, it can be established by evidence that the defendant knew the specific analogue he was dealing with, even if he did not know its legal status as an analogue.

*United States v. Moton*, 951 F.3d 639, 643 (5th Cir. 2020).

Mr. Espinoza's sworn testimony at his rearraignment hearing is contrary to his belated assertion of innocence and establishes that he satisfied the knowledge requirement in both ways. Not only did he confirm that he was knowingly and voluntarily entering a guilty plea with respect to conspiring to distribute a Schedule I controlled substance analogue, the essential elements of which were explained in detail during the hearing by Assistant United States Attorney Joseph Magliolo, he also stated that he knowingly and voluntarily agreed to the "Stipulated Facts" section of the factual resume that specified FUB-AMB as a Schedule I controlled substance analogue intended for human consumption. Rearraignment Hr'g Tr. 11:22-14:2 June 20, 2019. The court, thus, finds that Defendant has not successfully asserted his innocence, and that he knowingly and voluntarily pleaded guilty, which is also one of the *Carr* factors to be considered. These two factors—assertion of innocence and voluntariness of Defendant's original guilty plea—weigh against allowing him to withdraw his guilty plea.

### B. Close Assistance of Counsel

Mr. Espinoza argues that, despite Mr. James Felman, an attorney more experienced in defense of prosecutions brought pursuant to the Analogue Act, advising his counsel, Mr. Michael Levine, that Mr. Espinoza was "almost certainly not guilty," Mr. Levine advised Mr. Espinoza to persist in his guilty plea. Mr. Espinoza further contends that, within a matter of days of entering his guilty plea, he advised Mr. Levine that he wished to withdraw it and his request was ignored. As a result, he asserts that he was denied effective assistance of counsel.

Determining whether Mr. Espinoza received *close* assistance of counsel, however, is an inquiry distinct from whether he received *effective* assistance of counsel. *United States v. McKnight*, 570 F.3d 641, 646 (5th Cir. 2009). "Ineffective assistance is a basis for invalidating a conviction under the Sixth Amendment and is not, strictly speaking, relevant to the decision of whether Defendant was denied close assistance of counsel under [the] *Carr* analysis." *United States v. Urias-Marrufo*, 744 F.3d 361, 365 (5th Cir. 2014). "Determining whether a defendant received close assistance of counsel requires a fact-intensive inquiry." *McKnight*, 570 F.3d at 646.

The factual predicate offered in Mr. Espinoza's Motion and the evidence in this case demonstrate that Mr. Levine closely assisted him by: (1) negotiating a favorable plea agreement with the Government, (2) advising Mr. Espinoza of communications with both Prof. Dudley and Mr. Felman, and (3) urging Mr. Espinoza to retain the services of Prof. Dudley. Def.'s Mot. to Withdraw 2-3. Additionally, during the sentencing hearing on February 18, 2021, the court, in open court, expressed serious concerns about whether Mr. Levine was competent to represent Mr. Espinoza. Sentencing Hr'g Tr. 14:14-14:17 Feb. 18, 2021. In an *ex parte* conversation at the bench with Mr. Espinoza and Mr. Levine, the court directly asked Mr. Espinoza whether he wanted to continue with Mr. Levine as his counsel "despite the fact that [Mr. Levine] missed objections—deadlines for filing objections twice, and missed a deadline for filing a continuance or [objection] to the Presentence Report." *Id.* at 14:21-14:25. Mr. Espinoza unequivocally answered, "Yes" four times and "I would like for him to continue on my case." *Id.* at 15:2-15:5. He did not ask any questions and answered the court's questions without hesitation. Based on the facts set out in this section, the court finds that Mr. Espinoza received close assistance from counsel. This factor also weighs against allowing Defendant to withdraw his guilty plea.

### C. Remaining Factors

Mr. Espinoza bases his Motion on only two of the *Carr* factors—assertion of innocence and close assistance of counsel—and does not discuss the remaining factors. The court will not proceed with a lengthy analysis of the remaining factors. Based on the totality of the circumstances, a fair and just reason for allowing Mr. Espinoza to withdraw his guilty plea has not been established.

#### 1. Unnecessary Delay, Inconvenience to the Court, and Waste of Judicial Resources

These three factors weigh against allowing Mr. Espinoza to withdraw his guilty plea. The "rationale for allowing a defendant to withdraw a guilty plea is to permit [him] to undo a plea that was unknowingly made at the time it was entered." *Carr,* 740 F.3d at 345 (citing *Everett v. United States,* 336 F.2d 979, 984 (D.C. Cir. 1964)). The purpose is not to enable a defendant "to make a tactical decision to enter a plea, wait several weeks [or later], and then obtain a withdrawal if [he] believes that [he] made a bad choice in pleading guilty." *Id.* The court in *Carr* found a defendant's motion to withdraw to be "not promptly filed" when the defendant filed a motion 22 days after entering his guilty plea. *See Carr,* 740 F.2d at 345. Moreover, the court in *Brewster* denied a defendant's motion to withdraw his plea of guilty when the defendant sought to withdraw three months after his plea. *See Brewster,* 137 F.3d at 858.

Here, Mr. Espinoza is seeking to withdraw 22 months after his original plea of guilty. The time expended by this court and the Government over the past 22 months has already been substantial. Numerous delays and unduly late filings have already inconvenienced both the court and the Government, including the delay in the filing of this withdrawal motion. More likely than not, additional delays will occur if the court allows Mr. Espinoza to withdraw his plea at this stage. While the time that it takes to decide constitutional issues and matters relating to one's guilt or innocence would not ordinarily negatively affect the court's consideration of a defendant's motion;

however, given that the repeated disregard of the court's orders has become routine, the remaining factors—delay in filing the withdrawal motion, inconvenience to the court, and waste of judicial resources—weigh against allowing Mr. Espinoza to withdraw his guilty plea.

### 2. Prejudice to the Government

This factor has not been fully developed and, therefore, the court does not know the extent to which it is applicable in this case. In any event, even if the court rules that there is no prejudice to the Government, this factor alone would not support the withdrawal of Defendant's guilty plea.

## IV. Conclusion

For the reasons stated herein, the court determines that the vast majority of the *Carr* factors and totality of circumstances do not establish a fair and just reason for allowing Mr. Espinoza to withdraw his guilty plea. Accordingly, the court **denies** Defendant's Motion to Withdraw his Plea of Guilty (Doc. 255)**, and the sentencing hearing will proceed on Thursday, May 13, 2021, at 9:30 a.m. in the undersigned's courtroom.**

**It is so ordered** this 10th day of May 2021.

Sam A. Lindsay
United States District Judge